```
                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF HAWAII

                                  )
MARTIN DEFENSE GROUP, LLC,        )   CIV. NO. 23-00166 SOM-KJM
                                  )
        Plaintiff,                )   ORDER ADOPTING AND
                                  )   SUPPLEMENTING MAGISTRATE
                                  )   JUDGE'S FINDINGS AND
        vs.                       )   RECOMMENDATION TO GRANT
                                  )   PLAINTIFF'S MOTION TO REMAND
                                  )   AND TO DENY FEES AND COSTS
ASPEN AMERICAN INSURANCE          )
COMPANY; CLIFFORD H.W. CHEN;      )
DOE DEFENDANTS 1-100,             )
                                  )
        Defendant.                )
_____    )
```

**ORDER ADOPTING AND SUPPLEMENTING MAGISTRATE
JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT
<u>PLAINTIFF'S MOTION TO REMAND AND TO DENY FEES AND COSTS</u>**

**I.      INTRODUCTION AND BACKGROUND.**

   This order concerns the civil case between Plaintiff Martin Defense Group, LLC ("MDG"), and Defendant Aspen American Insurance Company ("Aspen") and addresses whether the case should be remanded to state court.

   MDG initiated this case in state court on June 9, 2022. ECF No. 1-1. The Complaint named Aspen and MDG's CFO, Edward H.W. Chen, as Defendants. *Id*. Against Aspen, MDG brought claims of negligence and bad faith. *Id*. Against Chen, it claimed gross negligence. *Id*. At the center of the case is the Management Liability Policy that Aspen sold to MDG ("the Policy"). *Id*. According to MDG, under the Policy, Aspen owed MDG duties of reasonable care, good faith, and fair dealing—all of which MDG

says Aspen breached by refusing to defend and indemnify MDG when another company sued one of MDG's employees and MDG.  *Id*.

On April 11, 2023, Aspen filed a Notice of Removal on diversity grounds.  ECF No. 1.  MDG then timely moved to remand.  ECF No. 12.  Following briefing and an in-person hearing, Magistrate Judge Kenneth Mansfield issued his Findings and Recommendation ("F&R"), recommending that this court remand the case to state court and also deny MDG's request for attorneys' fees and costs.  ECF No. 23.

Aspen timely objected to the F&R, challenging Judge Mansfield's recommendation that the court remand the case.  ECF No. 24.  MDG did not file an objection to the F&R, but it did file a timely response to Aspen's Objections.  ECF No. 26.

II.     **STANDARD OF REVIEW.**

When a party timely objects to a portion of a Magistrate Judge's F&R, "A judge of the court shall make a *de novo* determination of those portions of the . . . specified proposed findings or recommendations."  28 U.S.C. § 636(b)(1).  Aspen's Objection challenged the portion of Judge Mansfield's F&R concerning whether the court should remand this case.  ECF No. 24.  Accordingly, this court reviews that issue *de novo*.  Based on its *de novo* review, the court adopts and supplements Judge Mansfield's recommendation to remand this case.

"[A] district court is under no obligation to review a

2

portion of a magistrate judge's report unless an objection to it has been filed." *See Maisonet v. Genett Grp., Inc.*, 863 F. Supp. 2d 138, 143 (D.P.R. 2012). Here, neither party has objected to the section of Judge Mansfield's F&R addressing attorneys' fees and costs. Accordingly, this court need not review the recommendation as it concerns that issue. The court adopts that portion of the F&R in full. MDG's request for attorneys' fees and costs is denied.

**III.      ANALYSIS.**

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). Aspen removed this case on the basis of diversity jurisdiction. ECF No. 1, PageID # 2. The parties agree that, at the time of filing, Plaintiff MDG and Defendant Chen were both citizens of Hawaii. *Id.*; *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (the federal diversity jurisdiction statute requires that "the citizenship of each plaintiff is diverse from the citizenship of each defendant"). Aspen argues that the case was nonetheless removable because MDG had destroyed diversity only by fraudulently including Chen in the case, and had then voluntarily dismissed him. ECF No. 19.

There is a strong presumption against removal jurisdiction. *See Pouratian v. Travelers Com. Ins.*, Civ. No.

3

15-1507 FFM, 2015 WL 12832099, at *1 (C.D. Cal. Mar. 6, 2015) (*citing Gaus v. Miles, Inc.*, 980 F.2d 564, 568 (9th Cir. 1992)). The burden is on the removing party to show that removal is proper. *Id*. There is also a general presumption against finding fraudulent joinder. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). These dual presumptions impose a particularly heavy burden on Aspen in its attempt to justify removal based on fraudulent joinder. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009) (addressing the dual presumptions against removal and fraudulent joinder and how they combine to place an especially heavy burden on parties asserting fraudulent joinder as a justification for removal).

### A. MDG Did Not Fraudulently Join Chen.

Aspen argues that MDG's claims against Chen were so insubstantial and frivolous that Chen's inclusion as a Defendant constituted a fraudulent joinder. A court may disregard the citizenship of a fraudulently joined party in determining whether the court has jurisdiction over a case. *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914). Without Chen, the parties would have been completely diverse, and this court could have exercised diversity jurisdiction. *See* ECF No. 1 (identifying MDG and Aspen as diverse parties and the amount in controversy as over $75,000).

4

Although Aspen asserted fraudulent joinder of Chen in opposing MDG's remand motion, the F&R does not mention fraudulent joinder at all.[1]  The F&R's silence on the fraudulent joinder issue may have flowed from the absence of the issue in MDG's original motion to remand.  But grappling with the fraudulent joinder issue is a necessary task in addressing Aspen's objection to the F&R.  Because this court's review of that objection is *de novo*, there is no impediment to addressing the fraudulent joinder issue at this time.

"There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018), *quoting Hunter*, 582 F.3d at 1044.  Aspen takes the latter approach, arguing that MDG could not possibly have succeeded in its claim against Chen.  To establish fraudulent joinder, Aspen has to show not only that there was no theory on which a court could have found Chen liable, but also that the deficiency of MDG's claim

---

[1] The F&R is similarly silent on MDG's argument that remand was appropriate because Aspen's removal of the case was untimely. MDG's position is that the removal period ran from the state court's order dismissing Chen, while Aspen's position is that the removal period did not begin to run until MDG failed to file an amended complaint stating colorable claims against Chen. Because this court lacks subject matter jurisdiction over this action, this court does not reach the timeliness question.

5

was "obvious according to the settled rules of [Hawaii]."  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quotation marks omitted).  Aspen meets this burden if Aspen establishes that MDG's claim against Chen was "wholly insubstantial and frivolous."  *See Grancare*, 889 F.3d at 549.  But "if there is a possibility that a state court would find that the complaint states a cause of action against [Chen], the federal court must find that the joinder was proper and remand the case to the state court."  *See id.* at 548, *quoting Hunter*, 582 F.3d at 1046.

      Aspen says that "MDG's negligence claim had no possibility of success against Chen," because Chen had no involvement with or responsibilities for MDG's insurance program.  ECF No. 19, PageID # 160.  In support of this assertion, Aspen must present "clear and convincing evidence."  *See Hamilton*, 494 F.3d at 1206.  Aspen fails to meet this burden.

      Aspen presents only one piece of evidence that Chen did nothing in connection with MDG's procuring of the Policy: Chen's responses to Aspen's interrogatories.[2]  ECF No. 19, PageID

---

[2] "<u>Interrogatory No. 1</u>: Were You involved in the review or completion of the Application[?]
<u>Answer:</u> . . . No. Those responsibilities would fall under those of Pacific Marine. . . .
<u>Interrogatory No. 5</u>: Describe your responsibilities for MDG's insurance program[.]
<u>Answer:</u> . . . None defined.  I understand that prior to, during and subsequent to my time as CFO, insurance procurement had been, was, and is controlled by Pacific Marine personnel who ultimately

# 171-72. Specifically, Aspen relies on one exchange from the interrogatory: "Aspen asked Chen under oath whether he was involved in the 'review or completion' of the application for the Policy. Chen's response was 'No. Those responsibilities would fall under those of Pacific Marine.'" ECF No. 19, PageID # 171-72. This exchange is ambiguous and does not amount to clear evidence. Chen's response could indeed mean that he played no role in procuring MDG's Policy. It might also indicate only that he was not the one personally filling out or reviewing the application documents.

Moreover, reliance solely on Chen's statement raises the concern that Chen, having been sued, may have been naturally motivated to obscure or minimize anything he had done. The court is certainly not accusing him of misrepresentation; the court is only concerned that the evidence Aspen cites is not clear and convincing. The record does not suggest any reason Aspen is relying only on the interrogatory answers. Aspen itself does not explain why it could not or did not supply stronger evidence.[3]

---

reported to Seven Loui. . . .
<u>Interrogatory No. 6:</u> Identify the third-party administrator, broker, agency, and/or agent that You used to assist MDG in procuring the Policy[.]
<u>Answer:</u> . . . I do not recall who MDG used. Any such communication on the matter on behalf of MDG was through and/or in participation with Pacific Marine personnel."
ECF No. 19-8, PageID # 395-97

[3] For its part, MDG does not present strong evidence refuting Aspen's assertion. MDG alleges only that "Chen was responsible for MDG's insurance program and ensuring that MDG obtained proper

*See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995) ("[F]raudulent joinder claims can be resolved by piercing the pleadings and considering summary judgment-type evidence such as affidavits and deposition testimony.") (quotation marks omitted).

        Even if Chen had no involvement in MDG's procurement of the Policy, "[n]egligence can result from a failure to act as well as from affirmative acts." *Quality Furniture, Inc. v. Hay*, 61 Haw. 89, 92, 595 P.2d 1066, 1068 (1979). In other words, if Chen had a duty to procure MDG's Policy, but remained uninvolved in the process, that could be a basis for liability. Aspen addresses this possibility, arguing that Chen could not be liable for his failure to act because he had no duties related to MDG's insurance program. ECF No. 19, PageID # 172. In making this assertion, Aspen relies on the same set of responses to Aspen's interrogatories. ECF No. 19, PageID # 171-72. To prove that Chen had no obligations related to the insurance program, Aspen quotes an interrogatory question about Chen's "responsibilities for MDG's insurance program," to which Chen replied "None defined." ECF No. 19, PageID # 172.

        Chen's response is curiously worded and therefore open to multiple interpretations. It leaves unclear whether he had no

---

insurance policies, including . . . D&O insurance policies." ECF No. 1-1, PageID # 15. But it is Aspen that has the burden here.

duties related to procurement of MDG's insurance policies, or whether his duties were not well-defined. This is not the clear evidence required for proof of fraudulent joinder. Because Aspen has not presented clear and convincing evidence, the court cannot accept, as a factual matter, that, for purposes of a fraudulent joinder analysis, Chen lacked any duty related to MDG's insurance program.[4]

This conclusion is supported by the state court's dismissal of MDG's claim. In dismissing the claim, the state court granted leave to amend, indicating that it did not view any amendment as inevitably futile. See Off. of Hawaiian Affs. v. State, 110 Haw. 338, 365, 133 P.3d 767, 794 (2006) (explaining that, under state law, courts can and often do dismiss cases without leave to amend when amendment would be futile). If the state court considered it possible that defects in the claim against Chen might be curable, that might indicate that the state court was not determining that the claim was necessarily "wholly insubstantial and frivolous." See Grancare, 889 F.3d at 550 (indicating that a curable claim is not wholly insubstantial and frivolous). The state court's perspective is relevant because the fraudulent joinder analysis requires the federal court to

---

[4] Once again, MDG's evidence in response to Aspen's claim is minimally persuasive. ECF No. 1-1, PageID # 15 ("Chen was responsible for MDG's insurance program"). But, again, the burden on this point rests with Aspen.

9

predict how a state court would regard the claim. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).

### B. Chen's Dismissal Was Not a "Voluntary Act" by MDG.

The F&R is based on an analysis of whether MDG could be said to have voluntarily dismissed Chen, thereby leaving a case in which the parties were completely diverse. According to the F&R, MDG should not be seen as having voluntarily dismissed Chen in state court proceedings by virtue of having failed to submit an amended complaint with an amended claim against Chen after the state court dismissed the original claim against Chen. Aspen argues that MDG's failure to file an amended complaint represented a voluntary act on MDG's part that allowed Aspen to remove the case. The parties agree that an involuntary dismissal of Chen would not give Aspen a basis for removal.

The voluntary-involuntary rule is a judge-made rule establishing that, in the absence of fraud, a case filed in state court that is not initially removable can only become removable through a plaintiff's voluntary act. *See Self v. Gen. Motors Corp.*, 588 F.2d 655, 657 (9th Cir. 1978). The rule can be traced to Supreme Court decisions from the turn of the 20th century. *See e.g.*, *Powers v. Chesapeake & O. Ry. Co.*, 169 U.S. 92, 93 (1898); *Whitcomb v. Smithson*, 175 U.S. 635, 638 (1900).

The voluntary-involuntary rule operates primarily to protect the plaintiff's status as master of the claim. *See Self*,

10

588 F.2d at 659. "American jurisprudence has a long history of allowing the plaintiff to sculpt his lawsuit by selecting the initial forum as well as the claims and defendants that he will join." Jeff Fisher, *Everybody Plays the Fool, Sometimes; There's No Exception to the Rule: Procedural Misjoinder Is Not an Exception to the Voluntary-Involuntary Rule*, 60 Baylor L. Rev. 993, 998 (2008). In keeping with this long history, the voluntary-involuntary rule gives a plaintiff the power to determine the case's removability. This is but one way that the law of civil procedure maintains a plaintiff's historical status as master of the claim. *See, e.g.*, *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (stating that only the plaintiff's actions can affect whether a case arises under federal law); *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 214 (1906) (stating that only the plaintiff's conduct affects whether defendants are sued severally or jointly).

In addition to protecting the plaintiff's role as master of the claim, the voluntary-involuntary rule also advances efficiency and finality by avoiding certain outcomes that would waste the court's limited resources.[5] The rule ensures that a

---

[5] In the Second Circuit, the efficiency rationale is a key reason for the voluntary-involuntary rule. *See Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 (2d Cir. 1980) (stating that the rule's purpose "is to protect against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal producing renewed lack of complete diversity in the state court action") (quotation marks and citations omitted).

case's removal status only changes with the plaintiff's consent. *See Poulos*, 959 F.2d at 72.

Because the voluntary-involuntary rule is judge-made, its underlying rationales play an important role in guiding courts as they make decisions implicating the rule. Particularly when parties ask the court to apply the rule in new contexts, courts lean heavily on one or more of these rationales to make their determinations. Aspen asks this court to allow removal on the basis of an act that has never before been considered a "voluntary act."

Aspen's position undermines a plaintiff's power to shape the litigation. Characterizing a plaintiff's nonfiling as a "voluntary act" could have the effect of redistributing some of a plaintiffs's traditional power over removability to the court and the defendant. A plaintiff might be forced to file an amended complaint to keep a case in state court, regardless of any financial or strategic considerations that might weigh in the other direction. A plaintiff would thereby be denied the option of resting on an original pleading and choosing to challenge the dismissal of the pleading on appeal. Denying a plaintiff this

---

In the Ninth Circuit, this rationale may have a lesser role. *See Shemp v. Yamaha Corp. of Am.*, No. 206CV00565KJD-GWF, 2006 WL 2669185, at *3 n.2 (D. Nev. Sept. 18, 2006) ("The Ninth Circuit, however, does not subscribe to the reasoning that appealability/finality is the primary (or even a) purpose beyond the voluntary-involuntary rule.").

option would be inconsistent with preserving the plaintiff's mastery of the case, an underpinning of the voluntary-involuntary rule. It would also be incompatible with the efficiency and finality rationale. If this case were to proceed in federal court and MDG claimed a right at some point to appeal the state court's order dismissing its claims against Chen, *see* ECF No. 26, PageID # 464, an appellate court's reversal of Chen's dismissal would divest this court of diversity jurisdiction, possibly after lengthy proceedings had already occurred.

Most courts that have ruled on the question have decided that a failure to act is not a "voluntary act" under the voluntary-involuntary rule. *See, e.g.*, *Shemp*, 2006 WL 2669185 at *4 (stating that even if the dismissal had resulted from the plaintiff's failure to file an opposition to a motion to dismiss, it would not have constituted a "voluntary act" for removal purposes); *Gandy v. Crompton*, 55 F.Supp.2d 593, 596–97 (S.D. Miss. 1999) (concluding that the plaintiff's failure to serve the resident defendants did not amount to a "voluntary act"); *Ushman by Ushman v. Sterling Drug, Inc.*, 681 F. Supp. 1331, 1336 (C.D. Ill. 1988) (implying that dismissal, which resulted from the plaintiff's failure to act in accordance with a statute, did not result from the plaintiff's "voluntary act" as is required for removal); *Cook v. Pep Boys–Mannie, Moe & Jack, Inc.*, 641 F. Supp. 43, 45–46 (E.D. Pa. 1985) (explaining that the plaintiff's

13

failure to file an opposition to the motion for judgment on the pleadings "would not be sufficient to justify removal").

Some courts have decided otherwise, ruling that a plaintiff's failure to act is sometimes the functional equivalent of a "voluntary act" and therefore provides a basis for removal. *Quinn* is the most cited of these cases. 616 F.2d at 40.  In *Quinn*, the Second Circuit ruled that by not appealing the dismissal of a nondiverse party, the plaintiff had engaged in a "voluntary act" and thereby made the case removable.  While *Quinn* governs in the Second Circuit, the Ninth Circuit does not appear to be on the same path.  *See Strasser v. KLM Royal Dutch Airlines*, 631 F. Supp. 1254, 1258 (C.D. Cal. 1986) (discussing how the 'functional equivalent' concept, adopted in *Quinn*, conflicts with the Ninth Circuit's approach, as detailed in *Self*).

Nor have defendants in other cases seen much success in trying to get courts to treat as "voluntary acts" actions taken or required by persons other than the plaintiffs themselves. *See, e.g.*, *People of State of Cal. By & Through Lungren v. Keating*, 986 F.2d 346, 348 (9th Cir. 1993) (stating that the defendant's impleader did not amount to a "voluntary act" for removal purposes); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir. 1967) ("The manner in which the resident defendant was dismissed in the instant case, by a directed verdict, is the

14

classic situation where removal long has been denied for good reason."); *Rodriguez v. Doe*, No. H-08-1339, 2008 U.S. Dist. LEXIS 54634, at *9 (S.D. Tex. July 16, 2008) (explaining that caselaw does not support the proposition that an intervenor's filing is the product of the plaintiff's "voluntary act"); *Knutson v. Allis-Chalmers Corp.*, 358 F.Supp.2d 983, 993 (D. Nev. 2005) ("The grant of summary judgment was not a voluntary act on the part of Plaintiffs and cannot serve as the basis for removal."); *Leong v. Taco Bell Corp.*, 991 F. Supp. 1237, 1238 (D. Or. 1998) (ruling that the state court's dismissal of the defendant because of the plaintiff's failure to state a claim was not the result of the plaintiff's "voluntary act" even if it resulted from the plaintiff's amending of his complaint); *Priest v. Sealift Servs. Int'l, Inc.*, 953 F. Supp. 363, 364 (N.D. Ala. 1997) (determining that the court's severance of the claims did not constitute a "voluntary act" for removal purposes).

The earliest Supreme Court decisions pertaining to the voluntary-involuntary rule provide further support for the idea that a "voluntary act" must be a plaintiff's affirmative and willing act. *See, e.g.*, *Am. Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 317 (1915) (affirming that the case was nonremovable because the "plaintiff [was] compelled, by the adverse ruling of the court, to take an involuntary nonsuit"); *Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co.*, 215 U.S. 246,

249-50 (1909) (concluding that the dismissal of the nondiverse defendants on the merits did not make the case removable); *Whitcomb*, 175 U.S. at 638 (ruling that the directed verdict did not make the cause removable because "It was adverse to plaintiff, and without his assent"). Although the rationales for the decisions vary, there is a pattern. For an act to change a case's removal status it should be the kind of act that conveys the plaintiff's willingness to see that status change.

Here, it cannot reasonably be said that MDG took any act that communicated a willingness for the case to become removable. If MDG had wanted to dismiss Chen and make the case removable, MDG could have filed a notice of dismissal in accordance with Rule 41 of the Hawaii Rules of Civil Procedure, sought a stipulated dismissal, moved to dismiss its own claim against Chen, or even submitted an amended pleading omitting claims against Chen. Instead, it merely chose not to file an amended complaint after having received leave to do so. A plaintiff's decision not to file an amended complaint, even after requesting and receiving leave to do so, does not amount to a "voluntary act" by the plaintiff for purposes of the voluntary-involuntary rule applicable to removal.

**III.    CONCLUSION.**

The court overrules Aspen's objections. MDG did not fraudulently join Chen, and its failure to file an amended

16

complaint was not tantamount to a voluntary dismissal of Chen for purposes of removal.

The Motion to Remand is granted to the extent it seeks remand of this case to state court.  The request for fees and costs is denied.  The Clerk of Court is directed to send a certified copy of this order to the Circuit Court of the First Circuit, State of Hawaii, and to close this federal case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 22, 2023.



/s/ Susan Oki Mollway

Susan Oki Mollway

United States District Judge

*Martin Defense Group, LLC, v. Aspen American Insurance Company; Clifford H.W. Chen; Doe Defendants 1-100*, Civ. No. 23-00166 SOM-KJM; ORDER ADOPTING AND SUPPLEMENTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION TO REMAND AND TO DENY FEES AND COSTS.